**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: December 23 2015

John P. Gustafson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 12-34457 |
| | ) | |
| Denise R. Walker and | ) | Chapter 7 |
| Robert L. Walker, | ) | |
| | ) | Adv. Pro. No. 15-3012 |
|          Debtors. | ) | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | ) | Judge John P. Gustafson |
| Denise R. Walker, | ) | |
| | ) | |
|          Plaintiff/Counter- | ) | |
|          Defendant, | ) | |
|   v. | ) | |
| | ) | |
| Federal Insurance Company, | ) | |
| | ) | |
|          Defendant/Counter- | ) | |
|          Plaintiff. | ) | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | ) | |
| Federal Insurance Company, | ) | |
| | ) | |
|          Defendant/Third-Party | ) | |
|          Plaintiff, | ) | |
|   v. | ) | |
| | ) | |
| Robert L. Walker, | ) | |
| | ) | |
|          Debtor/Third-Party | ) | |
|          Defendant. | ) | |
| | ) | |

# MEMORANDUM OF DECISION AND ORDER REGARDING DEFENDANT/COUNTER-PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF/COUNTER-DEFENDANT

Plaintiff Denise R. Walker ("Plaintiff" or "Mrs. Walker") was a debtor in the underlying Chapter 7 case. She commenced this adversary proceeding, seeking a determination that an alleged debt owed by her to Defendant Federal Insurance Company ("Defendant" or "FIC") was discharged in this court on January 31, 2013 [Case No. 12-34457, Doc. # 33], and that Defendant's actions in attempting to collect the alleged debt post-discharge were in violation of the automatic stay imposed under 11 U.S.C. § 524. [Doc. # 1]. FIC argues that it is still owed a debt by Plaintiff pursuant to 11 U.S.C. § 523(a)(3)(B) as it was never listed as a creditor in Plaintiff's underlying Chapter 7, because the debt is of a type that is nondischargeable pursuant to 11 U.S.C. § 523(a)(2), (4), and (6).

In response to Plaintiff's "Complaint to Determine Dischargeability," ("Complaint"), FIC filed an "Answer of Federal Insurance Company to Complaint; Counterclaim of Federal Insurance Company Against Denise R. Walker; and Third-Party Complaint of Federal Insurance Company Against Robert L. Walker." ("Answer" or "Counterclaim" or "Third-Party Complaint") [Doc. # 3]. Robert L. Walker ("Mr. Walker") was a joint debtor in the underlying Chapter 7 case and is a third-party defendant in the case at bar.

This adversary proceeding is now before the court for decision on Plaintiff's "Complaint to Determine Dischargeability" [Doc. # 1], FIC's Counterclaim [Doc. 3], Plaintiff's "Response in Opposition to Defendant's Counterclaim and Third Party Complaint" ("Response") [Doc. # 4], and FIC's Motion for Summary Judgment against Mrs. Walker ("Motion") [Doc. # 12].

The district court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334(b) as a civil proceeding arising in a case under Title 11. This proceeding has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. Proceedings to determine the dischargeability of debts are core proceedings that the court may hear and decide. 28 U.S.C. § 157(b)(1) and (b)(2)(I).

This Memorandum of Decision constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, made applicable to this adversary proceeding by Fed. R. Bankr. P.

7052. Regardless of whether specifically referred to in this Memorandum of Decision, the court has examined the submitted materials, considered all of the evidence, and reviewed the entire record of the case. Based upon that review, and for the reasons discussed below, the court finds that FIC is entitled to judgment in its favor.

## **FINDINGS OF FACT**

This adversary proceeding arises out of circumstances in connection with Mrs. Walker's actions while employed by Sylvania Franciscan Health ("SFH"). At all times relevant to the case at hand, SFH was insured against property loss, "including by not limited to loss by theft and/or conversion, under a comprehensive insurance policy in full force and effect and issued by [FIC] to SFH (the 'Policy')." [Doc. # 12, p. 3]. FIC is an insurance company licensed to transact business in Ohio.

SFH operated Providence Care Centers ("the Center"), a senior living community located in Sandusky, Ohio. [*Id.*]. While living at the Center, and typically upon their admission, residents would sign authorizations that would allow the Center "to handle their personal funds through the use of Resident Trust Fund Accounts (the 'Trusts')." [Doc. # 12-1, Pl. Ex. 1, ¶ 2]. The Trusts were monitored by the Ohio Department of Health. [*Id.* at ¶ 4]. Of the funding that made up the Trust accounts, most came to the Center "as Social Security or pension reimbursements for residents' room and board charges." [Doc. # 12, p. 3].

While employed by the Center, Mrs. Walker's responsibilities included writing checks to the Center from the Social Security and/or pension reimbursements they received, in order to pay for the aforementioned room and board charges. Any amounts left in the Trusts' accounts would be used by the Center's residents to pay for personal items, "such as shampoo, clothes or snacks", and each quarter, the residents were to receive statements indicating the balances left in their respective Trusts. [Doc. # 12-1, Pl. Ex. 1, ¶ 3]

In January 2012, SFH found that Mrs. Walker had diverted funds from the Trusts' accounts to herself for her personal use. To divert the funds, Mrs. Walker "manipulated and/or forged the Center's records of residents' Trusts accounts to issue payments to herself so that [Mrs. Walker] improperly received at least $74,701.00 in unauthorized payments." [Doc. # 12, p. 4; Doc. # 12-1, Pl. Ex. 1, ¶5].

As an example of Mrs. Walker's conduct while employed by SFH, FIC's Motion sets forth

3

that Mrs. Walker collected the pension and Social Security reimbursements for a group of residents. Upon collection, Mrs. Walker would write a check to the Center for an amount less than the amount she had actually collected. According to FIC, Mrs. Walker would then embezzle the difference, and she would edit the Center's general ledger to reflect that it was owed only the amount of the check that she had tendered, instead of the amount that Mrs. Walker had actually collected. Mrs. Walker allegedly covered up her actions by failing to send out the residents' monthly statements. [*Id.* at ¶6]. According to the affidavit of Wendy Dolyk, the Center's Executive Director, Mrs. Walker's employment was immediately terminated at some point in January 2012 upon discovery of her actions. [*Id.*].

Mrs. and Mr. Walker (collectively, "Debtors") filed a joint Chapter 7 petition before this court on October 1, 2012. [Case No. 12-34457, Doc. # 1]. Neither the Center, SFH, nor FIC were listed on Debtors' petition as being owed a debt, and there were no addresses for any of the three entities listed on Debtors' Schedules [*Id.*] or Creditor Address Matrix. [*Id.* at pp. 49-52]. Because they were never listed in Debtors' petition, neither SFH nor Federal "received any notices from [Mrs. Walker] or this Court concerning [Mrs. Walker]'s bankruptcy case." [Doc. # 12, p. 5]. The deadline for objecting to discharge in Debtors' case was January 26, 2013, and Debtors received their discharge on January 31, 2013. [Case No. 12-34457, Doc. #33].

On March 12, 2013, Mrs. Walker was indicted on three counts, one charge of theft (a 4th degree felony), one charge of tampering with evidence (a 3rd degree felony), and one charge of forgery (a 4th degree felony). [Doc. # 12-3, Pl. Ex. 3, p. 1]. The case, *State of Ohio v. Denise R. Walker*, was brought in the Erie County Common Please Court in Case No. 2013-CR-110 before Judge Beverly K. McGookey. [*Id.*]. On August 20, 2013, Mrs. Walker pled guilty to the 4th degree felony theft charge pursuant to O.R.C. 2913.02(A)(1), and the other two charges were dismissed. [Doc. # 12-4, Pl. Ex. 4]. Mrs. Walker was sentenced on October 8, 2013. [Doc. #12-5, Pl. Ex. 5]. At the time of Mrs. Walker's sentencing, FIC had yet to become aware of her and her husband's bankruptcy filing and discharge.

Darren Zlasney, a recovery examiner with FIC, swore in his affidavit that because of Mrs. Walker's actions, she "improperly received at least $74,701.00 in unauthorized payments." [Doc. # 12-2, Pl. Ex. 2, ¶5]. He continued, stating that because of Mrs Walker's "manipulation, forgery, and/or destruction of SFH's records", FIC paid SFH "the sum of $93,531.33 which included

4

$19,830.33 in investigative costs...." [*Id.* at ¶¶ 5-6]. Accordingly, FIC became subrogated to the extent of its payments to SFH. [*Id.* at ¶ 6].

The first notice FIC received of Debtors' bankruptcy occurred in December 2013. At that time, Mr. Zlasney stated in his affidavit that it was only then that he was "advised of [Mrs. Walker's] filing by Federal's counsel." [Doc. # 12-2, Pl. Ex. 2, ¶ 7].

In addition to the sum of $93,531.33, FIC claims that SFH "remains uncompensated in an additional total amount of $1,000.00, which represents the deductible portion of SFH's [p]olicy." [Doc. # 12, p. 5]. Since April 30, 2014, Mrs. Walker had been making small monthly payments to FIC, totaling $260.00. With an additional $420 having been collected from Mrs. Walker, FIC alleges that the debt currently owed to it is $92,851.33. [*Id.*]. In December 2014, FIC obtained a judgment against Mrs. Walker in the Erie County Court of Common Pleas to collect the debt. [Doc. # 1, ¶ 12; Doc. # 3, ¶ 8]. No further information regarding the December 2014 judgment entry obtained by FIC has been provided to the court. Mrs. Walker ceased her monthly payments to FIC on February 10, 2015. [Doc. # 12, p. 5; Doc. # 12-2, Pl. Ex. 2, ¶10].

Plaintiff filed her Complaint in this court in February 2015, seeking a determination that the debt allegedly owed to FIC was discharged, that FIC's actions in attempting to collect the alleged debt post-discharge is in violation of the automatic stay imposed under 11 U.S.C. § 524. In answering the Complaint, FIC filed a counterclaim against Mrs. Walker, alleging that it is still owed a debt by her, as FIC was never listed as a creditor in Plaintiff's underlying Chapter 7, and because the debt is of a type that is nondischargeable pursuant to 11 U.S.C. § 523(a)(2), (3)(B), and (4). This case is now before the court on FIC's Motion for Summary Judgment against Mrs. Walker, in which FIC seeks a determination that the debt allegedly owed by Mrs. Walker is nondischargeable pursuant to 11 U.S.C. § 523(a)(3)(B) and 523(a)(4).

## LAW AND ANALYSIS

FIC seeks a nondischargeability determination regarding the debt allegedly owed to it by Mrs. Walker as a result of her actions while employed by SFH, which resulted in her allegedly receiving "at least $74,701.00 in unauthorized payments" [Doc. # 3, ¶ 5]. Additionally, FIC "was required to pay SFH the sum of $93,531.33 which included $19,830.33 in investigative costs. . . ." [*Id.* at ¶ 7]. According to FIC, the $93,531.33 debt is nondischargeable under § 523(a)(3)(B) as a

5

15-03012-jpg    Doc 13    FILED 12/23/15    ENTERED 12/23/15 16:45:53    Page 5 of 12

debt of a kind specified in § 523(a)(4)[1].

Generally, a complaint to determine the dischargeability of a debt under § 523(a)(4) must be filed no later than sixty days after the first date set for the meeting of creditors, unless the court extends the time for cause on motion of a party in interest. *See,* Fed. R. Bankr. P. 4007(c). Creditors are entitled to "no less than thirty days notice of the time so fixed. . . ." *Id.* If a complaint is not filed before the deadline set forth in Rule 4007(c), the debt is discharged. *See id.*; 11 U.S.C. § 523(c). However, there is a statutory exception to this rule. A debt is not discharged if the "debt is of a kind specified in § 523(a)(2), (4), or (6)" and was not listed or scheduled by the debtor as required under § 521(a)(1) in time to permit the timely filing of a proof of claim and request for a determination of dischargeability, "unless [the] creditor had notice or actual knowledge of the case in time for such timely filing and request." 11 U.S.C. § 523(a)(3)(B).

FIC has the initial burden of showing that a debt owed to it was not included in the Mr. and Mrs. Walker's bankruptcy schedules such that it had no formal notice of their bankruptcy in time to file a dischargeability complaint. Further, FIC, in its role as counter-plaintiff, must show that it holds a debt "of a kind specified" in § 523(a)(4).

Upon FIC meeting its burden, the burden shifts to Mrs. Walker to show that the FIC had "'notice or actual knowledge' in time to file a dischargeability complaint notwithstanding the fact" that FIC's debt was omitted from Mr. and Mrs. Walker's schedules. *In re Asbury*, 2014 WL 1323216, at *7, 2014 Bankr. LEXIS 1328, at *19 (Bankr. N.D. Ohio Mar. 31, 2014); *see also, Faden v. Ins. Co. of N. Am.,* 96 F.3d 792, 795 (5th Cir. 1996).

Although, generally, a creditor must prove exceptions to dischargeability for individual debts under 11 U.S.C. § 523(a) by a preponderance of the evidence, *Grogan v. Garner*, 498 U.S. 279, 291 (1991); there is disagreement as to the standard of proof applicable to the "of a kind specified in § 523(a)(2), (4), or (6)" language in § 523(a)(3)(B). The court in *Jones v. Warren Constr. (In re Jones)*, 296 B.R. 447, 450-51 (Bankr. M.D. Tenn. 2003) set forth three schools of thought: (1) a debtor's failure to timely schedule a creditor, preventing the creditor from receiving notice or having actual knowledge of the case, automatically excepts from discharge the creditor's claim; (2) a

---

[1]/ FIC's Motion alleges that Mrs. Walker "owes [FIC] under 11 USC § 523(a)(3)(B), 523(a)(4) and 523(a)(6). This motion only addresses application of 11 USC § 523(a)(3)(B) and 523(a)(4)." Thus, this court will rule on FIC's claim pursuant to § 523(a)(3)(B) and 523(a)(4), and not 523(a)(2) or (a)(6).

6

creditor must actually prove the merits of its claim under § 523(a)(2), (4) or (6); and (3) a creditor must only show that it has a viable or colorable claim under § 523(a)(2), (4) or (6).

In *Jones*, the court held that a creditor must actually prove the merits of its claims under § 523(a)(2), (4), or (6) to establish a nondischargeability claim under § 523(a)(3). *Jones*, 296 at 451. The *Jones* decision quoted *Waugh v. Eldridge (In re Waugh)*, 172 B.R. 31, 34 (Bankr. E.D. Ark. 1994), in which the *Waugh* court also found that a creditor must demonstrate the merits of the incorporated § 523(a)(2), (4) or (6) action. *Id.*

However, this court does not have to decide which of the three *Jones* standards is the correct one, as even using the most difficult standard, the debt here is non-dischargeable for the reasons that follow.

### A. Timely Notice or Actual Knowledge

In this case, there is no dispute that Mr. and Mrs. Walker neither listed nor scheduled SFH or FIC or any debt owed to them in accordance with the provisions of § 521(a)(1) before they received their discharge and their bankruptcy case was closed. [Case No. 12-34457, Doc. # 1]. Mrs. Walker admits that she failed to schedule any amount of SFH's loss on her Schedule F and that she did not include any address for SFH and/or FIC in her schedules or in the court's matrix of addresses for creditors. [Doc. # 3, ¶¶ 9-10; Doc. # 4, ¶ 5]. Thus, FIC has met its burden regarding a lack of formal notice of the Walker's bankruptcy in time to permit it to file a timely dischargeability complaint. With the burden then shifting to the Debtor, Mrs. Walker did not meet her burden of proving that FIC had notice or actual knowledge of her bankruptcy in time for such filing, as there was no response or reply filed to FIC's Motion, and no affidavits filed on Mrs. Walker's behalf in this action.

As discussed previously, SFH discovered Mrs. Wilson's actions in January 2012 and terminated her employment shortly thereafter. [Doc. # 12, p. 4; Doc. # 12-1, Pl. Ex. 1, ¶5]. Debtors filed their Chapter 7 petition before this court on October 1, 2012 [Case No. 12-34457, Doc. # 1], and neither the Center, SFH, or FIC (as SFH's subrogee) were listed on their petition as being owed a debt. Further, there were no addresses for any of the three entities listed on Debtors' Schedules [*Id.*] or Creditor Address Matrix. [*Id.* at pp. 49-52]. Because they were not listed in Debtors' petition, neither SFH nor Federal received any notices from the Debtors or this court concerning their bankruptcy case. [Doc. # 12, p. 5]. The deadline for objecting to discharge in Debtors' case

7

was January 26, 2013, and Debtors received their discharge on January 31, 2013. [Case No. 12-34457, Doc. #33]. As Mr. Zlasney, the recovery examiner with FIC, averred in his affidavit, FIC was unaware that Mrs. Walker had filed bankruptcy nor received a discharge until he was advised of the filing by FIC's counsel in December 2013, nearly a year after Debtors' discharge was entered. [Doc. # 12-2, Pl. Ex. 2, ¶7]. Mrs. Walker presents no evidence to contradict Mr. Zlasney's claim.

Thus, lacking the notice or actual knowledge required under § 523(a)(3)(B), to the extent FIC is owed a debt of a kind specified in § 523(a)(4), the debt would be nondischargeable.

### B. 11 U.S.C. § 523(a)(4)

FIC alleges that Mrs. Walker owes a debt to it that is nondischargeable under § 523(a)(4), which excepts from a Chapter 7 discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). Specifically, FIC alleges that Mrs. Walker "converted $74,701.00 belonging to SFH's . . . Center's residents' Medicaid trust accounts to her own property and use", and as a direct result, caused FIC to pay SFH "the sum of $93,531.33 which included $19,830.33 in investigative costs . . ." [Doc. # 3, ¶ ¶ 13-14].

A §523(a)(4) claim must be proven by a preponderance of the evidence. *R.E. America, Inc. v. Garver (In re Garver)*, 116 F.3d 176, 178 (6th Cir. 1997).[2] Under the embezzlement provision of §523(a)(4), there is no requirement to prove fiduciary capacity. *See, Peavey Electronics Corp. v. Sinchak (In re Sinchak)*, 109 B.R. 273, 276 (Bankr. N.D. Ohio 1990) (stating the element of "fiduciary capacity" in §523(a)(4) refers only to "fraud or defalcations" and need not be present where embezzlement is the exception relied upon). Embezzlement differs from larceny in that the embezzler's initial acquisition of the property is lawful, and embezzlement is defined and determined according to federal law. *Graphic v. Grim (In re Grim)*, 293 B.R. 156, 165-66 (Bankr. N.D. Ohio 2003). The Sixth Circuit defines embezzlement for purposes of §523(a)(4) as "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1172-73 (6th

---

[2]/ Fraud or defalcation requires a culpable state of mind such "as one involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *Bullock v. BankChampaign, N.A.*, 133 S. Ct. 1754, 1757, 185 L.Ed.2d 922 (2013). In the Sixth Circuit, the defalcation provision is limited to situations involving an express or technical trust relationship that arises from the placement of a specific res in the hands of the debtor. *Commonwealth Land Title Co. V. Blaszak (In re Blaszak)*, 397 F.3d 386, 391 (6th Cir. 2005); *In re Bucci*, 493 F.3d 635 (6th Cir 2007).

8

Cir. 1996); *see also, In re Fox*, 370 B.R. 104, 115-16 (B.A.P. 6th Cir. 2007).

A creditor proves embezzlement by establishing that (1) he entrusted his property to the debtor or debtor lawfully obtained the property, (2) the debtor appropriated the property for a use other than that for which it was intended, and (3) the circumstances indicate fraud. *Brady,* 101 F.3d at 1173. In the case at hand, the evidence shows that SFH entrusted the funds at issue to Mrs. Walker, and that Mrs. Walker used the funds in a manner other than what was intended by SFH.

While employed by the Center, Mrs. Walker was entrusted by the Center with the responsibility of handling certain monies that did not belong to her. Mrs. Walker was to write checks to the Center from the residents' "Trusts' accounts" reimbursements in order to pay their room and board charges, with any amount left in their Trusts' accounts available for use by the residents. [Doc. # 12-1, Pl. Ex. 1, ¶ 3]. The monies in the Trusts' accounts were intended to benefit the Center's residents, and not Mrs. Walker. By manipulating and/or forging the Center's general ledger and records of its residents' Trusts' accounts [Doc. # 12-1, Pl. Ex. 1, ¶ ¶ 5-6], Mrs. Walker was able to appropriate the property for a use other than for which it was intended. Therefore, the first and second elements of an embezzlement claim are established.

This brings the court to the third element of embezzlement under *Brady*, which is that the circumstances indicate fraud. "Fraud comes in many sizes, shapes, and shades of gray," *Fox,* 370 B.R. at 116, and in other contexts, "fraud" has been defined as "encompass[ing] 'any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another.'" *Mellon Bank, N.A. v. Vitanovich (In re Vitanovich)*, 259 B.R. 873, 877 (6th Cir. BAP 2001)(*quoting*, *McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000))(*citing*, 4 Lawrence P. King, Collier on Bankruptcy ¶ 523.08[1][e], at 523–45 (15th ed. rev.2000)).

Misrepresentations, omissions, or concealment of a debtor's actions regarding a creditor's property are important in considering actions that illuminate a fraudulent intent. *See, e.g., First Del. Life Ins. Co. v. Wada (In re Wada)*, 210 B.R. 572, 577 (9th Cir. BAP 1997) (debtor travel agent accepted deposit from creditor; after creditor cancelled travel plans, debtor falsely claimed she could not refund approximately $85,000 of creditor's money because it had been used for nonrefundable deposits with airlines and hotels; in fact, the debtor had kept the $85,000; debtor's misrepresentation about the deposits established "circumstances indicating fraud" and all elements of creditor's embezzlement claim were met).

9

However, a debtor's fraudulent intent can be negated by circumstantial evidence showing "that the debtor used [the creditor's property] openly, *without attempting to conceal, and had reasonable grounds to believe he had the right to so use."* In re Weber, 892 F.2d 534, 539 (7th Cir.1989) (debtor did not convert proceeds from sale of creditor's cattle with fraudulent intent, where creditor acquiesced to debtor's continued possession and control of the funds). A debtor has also been held to lack fraudulent intent when her "dominant motivation" in misappropriating a creditor's property is to benefit her own corporation and help the business survive, instead of trying to harm the creditor. *See, Transamerica Commercial Fin. Corp. v. Littleton (In re Littleton),* 942 F.2d 551, 556 (9th Cir.1991) (corporate officers of appliance sales and service business did not intend to defraud bank when they commingled funds and failed to remit sales proceeds to bank in violation of security agreement; at all times, the officers' primary intent was to see their business succeed).

Here, from the unrebutted evidence provided by FIC, the court finds that the circumstances surrounding Mrs. Walker's actions indicate fraud, thereby satisfying the third and final element of embezzlement.

Mrs. Walker had the authority to take funds from Social Security and pension reimbursements to pay for residents' room and board charges, but she did not have the authority to divert and convert monies belonging to the Center to her own property and use. [Doc. # 12, p. 3; Doc. # 12-2, ¶7]. Further evidencing Mrs. Walker's fraud are the sworn affidavits stating that Mrs. Walker manipulated, forged and/or destroyed SFH's records of residents' Medicaid trust accounts in order to receive and conceal the $74,701.00 in improper monies. [Doc. # 12-1, ¶¶ 5-6; Doc. # 12-2, ¶¶ 4-5]. The evidence, even viewed in the light most favorable to Mrs. Walker, demonstrates that her actions were not accidental or inadvertent. They were intentional acts, resulting in Mrs. Walker's firing and eventual guilty plea to a fourth degree felony theft charge in the case of *State of Ohio v. Denise R. Walker.* [Doc. # 12-1, ¶¶ 8-9].

Mrs. Walker, in diverting and converting monies to her own use, and in manipulating, forging, and/or destroying SFH's records, showed an intent to permanently deprive SFH and its residents of their property. She has not provided the court with any evidence or made any argument that would indicate she believed she had the right to use the property or did not attempt to conceal her acts.

Thus, even viewing the facts in the light most favorable to the Defendant, FIC has met its

15-03012-jpg    Doc 13    FILED 12/23/15    ENTERED 12/23/15 16:45:53    Page 10 of 12

burden of proving embezzlement under 523(a)(4). With respect to Mrs. Walker, the evidence shows that she was entrusted with and legally obtained SFH's property, appropriated said property for a use other than which it was intended, and the circumstances surrounding her actions indicate fraud. FIC has also proven that it had neither timely notice nor actual knowledge of Mrs. Walker's bankruptcy filing, as neither SFH nor the Center were listed as creditors on Mrs. Walker's petition. Therefore, FIC's Motion for Summary Judgment on its counterclaim against Mrs. Walker will be granted.

## CONCLUSION

For the foregoing reasons, good cause appearing,

**IT IS ORDERED** that FIC's Motion for Summary Judgment [Doc. # 12] be, and hereby is, **GRANTED**; and

**IT IS FURTHER ORDERED** that FIC, having met its burden under 11 U.S.C. § 523(a)(3), and, specifically, having proven that the debt at issue is of a kind specified in § 523(a)(4), will be granted judgment on its counterclaim against Mrs. Walker; and

**IT IS FURTHER ORDERED** that the judgment is not dischargeable in Mrs. Walker's Chapter 7 case and is therefore excepted from her discharge; and

**IT IS FURTHER ORDERED** that the court will not award a final judgment at this time, as it appears that there may be a state court judgment for the amount owed. To the extent there was a prior money judgment, a subsequent determination of the amount of the debt may not be properly entered based on the *Rooker-Feldman* doctrine, and

**IT IS FURTHER ORDERED** that FIC may submit evidence of any state court money judgment against Mrs. Walker, which shall be filed within 14 days of the signing of this Memorandum of Decision, and

**IT IS FURTHER ORDERED** that if no evidence of a money judgment is filed with the court, an evidentiary hearing on the amount of debt to be found nondischargeable in this court's final judgment shall be held on **February 9, 2016 at 1:30 p.m.**; and

**IT IS FINALLY ORDERED** that a pretrial hearing on FIC's third party complaint will be held on **February 9, 2016 at 3:30 p.m.**.

The court will enter a separate judgment, or supplement order, in accordance with this

Memorandum of Decision after the evidence of a judgment is filed, or the evidentiary hearing is held.

###

15-03012-jpg    Doc 13    FILED 12/23/15    ENTERED 12/23/15 16:45:53    Page 12 of 12